## ALBERT KEAWE v. EZRA KANA AND JAMES KAMAKA.

### No. 1767.

ARGUED OCTOBER 19, 1927.    DECIDED OCTOBER 31, 1927.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

The plaintiff, appellee, claimed title to a small piece of land located at Kahakuloa on the Island of Maui. The defendants, appellants, claimed that the title was in them. Because of these conflicting claims the plaintiff brought an action in the circuit court, to which action the defendants were made parties, seeking to have his title quieted. The defendants filed a general denial. The circuit court decided that the title was in the plaintiff and entered judgment accordingly. The defendants have brought the

case here on exceptions. The plaintiff predicates his claim of title on adverse possession for more than ten years and also on a deed from a former owner, whose title at the time of the deed is not disputed. As the circuit court viewed the testimony, and as we view it, it is not necessary to consider whether the deed conveyed title to plaintiff— his title by adverse possession being sufficiently established.

In reviewing the evidence tending to show title by adverse possession we will first consider certain facts that were proven by testimony that was not disputed. In the year 1914 Elizabeth Keawe Kamali was the owner of ten small pieces of land at Kahakuloa, Maui. These pieces of land were, under nomenclature peculiar to the Hawaiian Islands, known as apanas and were comprised in L. C. A. 6146-D to Kanui. The plaintiff was Elizabeth Kamali's brother-in-law, she having married his brother. This brother (husband of Elizabeth) died on May 6, 1914. After his death Elizabeth, because of money that had been advanced to her by the plaintiff to defray the funeral expenses of her husband and in recognition of her indebtedness to him for this as well as other services rendered to her at the time of her husband's death, agreed to give plaintiff apana 8 which consists of one acre of land and which is the land involved in this suit. In consequence of this agreement and with the approval of Elizabeth the plaintiff went into possession of apana 8, enclosed the whole of it with a fence and planted it in fruit and other trees and also planted a small portion of it in potatoes and sugar cane. He also built a small house on the land in which he and his family lived until 1919. In that year he tore down the small house and built a larger one which he thereafter occupied as a residence.

The material questions of fact in dispute are the date of the plaintiff's entry on the land and whether he aban-

doned the land at any time prior to the expiration of the ten year period provided by the statute for the acquisition of title by adverse possession. It is not disputed that during the continuance of his possession such possession had all the legal characteristics of adverseness. The circuit judge decided from the testimony that the plaintiff's possession began in June or July of 1914 and continued without interruption until November 11, 1924.

The case having come here on exceptions to a decision of the circuit court in an action at law tried without a jury, we are not required to determine whether its findings are true in fact but only whether they are supported by substantial evidence amounting to more than a scintilla. If they are so supported we are not at liberty to disturb them. With this purpose in view let us first examine the evidence as to when the plaintiff's possession began. It is undisputed that it did not begin until after the death of his brother (Elizabeth Kamali's husband). There is some apparent conflict in the evidence as to when this event occurred. The plaintiff himself testified that it occurred in 1913. The official certificate of death, however, discloses that it occurred on May 6, 1914. It may very well be assumed in the face of the official record that the plaintiff was mistaken in fixing the year at 1913 instead of fixing it at 1914. This evidently was the conclusion reached by the circuit court. At all events, according to the plaintiff's testimony, he went into possession of the land in July following his brother's death, built a house on it during the same month and exercised other acts of ownership.

It is urged by the defendants that this testimony of the plaintiff as to the date of his entry is inconsistent with other portions of his evidence on that subject and for that reason it is not of that substantial character that makes it more than a mere scintilla. With this contention we cannot agree. The inconsistencies in plaintiff's evidence,

pointed out by the defendants, evidently were insufficient to convince the trial court that his statement as to when he took possession of the land was untrue. His testimony being substantial and amounting to more than a scintilla is sufficient to sustain the finding of the lower court.

It is conceded that on November 11, 1924, the plaintiff left the premises in question and took up a homestead on the Island of Molokai where he has since resided. By that time his possession had ripened into a fee simple title unless he at some time prior thereto had abandoned the land. Between 1914 and 1924 the plaintiff twice went away from the land and lived for a short time elsewhere. Once, during a strike, he came with his family to Oahu where he worked in a cane field for a month and a half or two months and then returned to Kahakuloa and resumed his occupancy of the land in question. On another occasion he went to Lahaina where he took temporary employment as a police officer. He remained at Lahaina about six weeks, after which he again returned to the land. These temporary and brief absences were several years after the plaintiff's entry upon the premises. They were some time after he had built a larger house upon the land than the one he had first built and they were long after he had enclosed the land by a fence and brought it to a state of cultivation. It is fairly inferable from the plaintiff's testimony that his absences were caused by "hard times" and the necessity of obtaining temporary employment of a casual nature in order to earn enough money to relieve his needs. During these absences the land remained unoccupied by anyone else. The circuit court decided that under these circumstances plaintiff's absences did not constitute abandonment. We think this conclusion is sufficiently supported by the testimony. The plaintiff did not enter upon the land as a mere trespasser but under a claim of right. His possession from

the first was in good faith and under the belief that the land was his. We think under these circumstances that his temporary absences did not as a matter of law constitute abandonment.

We come now to a consideration of the facts upon which the defendants base their claim of title to the land in question. On August 3, 1915, Elizabeth Keawe Kamali (the one-time owner of apana 8) executed a mortgage to the Baldwin bank to secure a recited indebtedness of $400. This mortgage was subsequently assigned to the defendants. On August 6, 1924, during the absence of the plaintiff and without his knowledge or consent the defendants entered upon apana 8 for the purpose of foreclosing their mortgage. This entry consisted in merely walking upon the land with two witnesses and walking off again, and, as we have just observed, was at a time when the plaintiff was absent. Within thirty days after this entry the defendants filed in the office of the registrar of conveyances a duly verified certificate of entry. Between August 6, the date of their entry, and November 11, the date of plaintiff's departure for Molokai, the defendants did nothing further by way of asserting their claim of ownership to the land nor did the plaintiff relax his adverse holding or concede by word or act that the defendants had any rights in the land. On the contrary, when the defendants, subsequent to their entry, spoke to him on the subject he maintained that the land was his. Inasmuch as the plaintiff's possession from its very inception was hostile to the whole world, including the mortgagor and everyone who claimed any title or right under her, it follows that the mere transitory entry of the defendants, without the plaintiff's knowledge or consent, did not change the character of his possession or in any way interrupt its continuity. If he had been present when the entry was made and had

upon demand yielded possession to the defendants a different question would arise.

The record fails in another respect to show that the defendants acquired any title to apana 8 under the mortgage. The description of the property covered by the mortgage is as follows: "Do grant, bargain, sell and convey unto said Baldwin National Bank and its executors and assigns, all my right, title and interest in those certain pieces or parcels of land situated in Kahakuloa, Island of Maui, being the premises conveyed to John T. Waterhouse in a deed from Mataio Kenui dated the 8th day of November, A. D. 1861 and recorded in the office of the registrar of conveyances in liber 14 on pages 422 and 423, and in deed from Henry Waterhouse, Elizabeth Bourne Waterhouse and Mary Waterhouse Rice, to A. N. Hayselden, dated the 2nd day of April, A. D. 1901 and recorded in said register office in liber 223 on pages 53, 54, and 55, and in deed from A. N. Hayselden to me, dated the 28th day of September, A. D. 1901 and recorded in liber 225, on page 323; together with all improvements thereon." The only means of ascertaining what land is included in the mortgage is by referring to the various deeds therein mentioned. These deeds were not put in evidence and without them it is impossible to determine whether apana 8 was included in the description.

The exceptions are overruled.

*E. Vincent* (also on the brief) for plaintiff.

*Wendell F. Crockett* (also on the briefs) for defendants.